IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTIAN LANDRY,<br><br>Defendant. | Mar 21 2023<br><br>No. 3:23-mj-00183-MMS |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Thomas J. King, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a graduate of Buffalo State College, where I obtained a Bachelor of Science in criminal justice. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Department of Justice, and have been so employed since February 14, 2001. Prior to that, I was a Special Agent with the Immigration and Naturalization Service for five years, and an Inspector with the United States Customs Service for three years.

2. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Special Agent, I am familiar with the Federal Firearms laws. Through my experience I have also investigated numerous cases involving 18 USC 924(c), Use of a Firearm in Furtherance of a Violent Crime or a Crime Involving Drug Trafficking, and 21 USC 841 et seq., Controlled Substance violations.

3. I make this affidavit in support of an application for a criminal complaint and arrest

warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that CHRISTIAN LANDRY has committed the following federal criminal offenses:

> **Count 1**: **Distribution of Controlled Substances** – On or about February 9, 2023, in the District of Alaska, CHRISTIAN LANDRY knowingly and intentionally distributed a controlled substance, methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

4. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, my own investigation of this matter, and my training and experience. Since this affidavit is being submitted for the limited purpose of establishing probable cause to support a complaint and securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.

**FACTS ESTABLISHING PROBABLE CAUSE**

5. In November of 2022, I initiated an investigation of Elzie ISLEY and others involved in conspiracy with him to traffic methamphetamine. I conducted extensive undercover work during this investigation, in which I purported to be a purchaser of controlled substances interested in further redistributing them. During undercover contact with ISLEY, ISLEY told me that his main source for methamphetamine was a person who lived out of state, and only came to Alaska when he was ready to sell methamphetamine. ISLEY told me that once his supply of methamphetamine was gone, the source typically left Alaska, and didn't return until he was ready to sell drugs again.

6. During the investigation I received phone toll data pertaining to ISLEY's phone from the DEA several different times, and observed that one person ISLEY had multiple

contacts with was Christian LANDRY, and the phone number associated with LANDRY was from out of state. DEA Intelligence Analyst Mark Sullivan informed me that he had linked the number to LANDRY through open source documents.

7. On February 1, 2023, I met ISLEY in an undercover capacity and purchased approximately four ounces of methamphetamine. During that deal I asked ISLEY if I could buy an additional four ounces of methamphetamine later that day. ISLEY said to the effect, that he would check, and then dialed his cell phone. He put the phone on speaker and I observed the contact he called was saved as "Mike Fila". The person ISLEY called confirmed they could meet up, and ISLEY then turned to me and said he could get another four ounces of methamphetamine. We agreed to meet back up later that day.

8. While I waited for ISLEY, other ATF agents conducting surveillance watched ISLEY go to his residence. During the surveillance, three different vehicles stopped at his residence. One vehicle was a white GMC pickup later determined to have been owned and operated by Eric HANNULA. ISLEY then called me and told me we could meet. We did in fact meet, and I purchased an additional four ounces of methamphetamine. During this transaction, ISLEY mentioned that his source had just come to Alaska less than a week ago with 20 pounds of methamphetamine, and was now down to 16 pounds.

9. Both purchases described above were made with cash, using pre-recorded ATF funds.

10. On February 9, 2023, I prepared to meet ISLEY again. I had previously made a plan with ISLEY and it was his understanding I was going to buy one pound of



Mar 21 2023

methamphetamine, quickly sell it, and then meet ISLEY later that day to buy an additional pound. While I waited to meet ISLEY, ATF agents on surveillance observed HANNULA's pickup truck arrive at ISLEY's residence. After that, ISLEY called me and told me he was ready to meet me. I met ISLEY and purchased the pound of methamphetamine with ATF pre-recorded funds. I told ISLEY I was going to go sell the pound, and ISLEY indicated he was going to do what he needed to do to obtain more methamphetamine to sell to me later.

11. After ISLEY left, agents maintained surveillance on him and observed that he went back to his residence. After he arrived, HANNULA's pickup arrived and agents observed a small man with a hood pulled over his face leave the truck, and go to ISLEY's trailer. I had a phone conversation with ISLEY while that man was in ISLEY's residence, and ISLEY indicated he was standing right in front of "his guy", referring to his source of methamphetamine. The man exited the trailer and surveillance was maintained until the man was dropped off at an apartment complex at 7410 Bearfoot Circle, Anchorage. The man who came and went from the trailer to HANNULA's pickup fit Christian LANDRY's physical description, and did not fit HANNULA's description.

12. ISLEY came back to meet me as arranged, and was arrested at that time. Approximately 12 ounces of methamphetamine was seized from his vehicle. ISLEY agreed to an interview and I observed during the interview that he received numerous calls from the contact "Mike Fila". ISLEY indicated that the person wanted his money for the methamphetamine ISLEY had at his time of arrest. ISLEY gave consent for me to examine

U.S. v. Landry
3:23-mj-00183-MMS

his phone. I observed that the phone number saved as "Mike Fila" was the phone number associated to Christian LANDRY. I also observed a text where LANDRY directed ISLEY to meet him where he was staying, 7410 Bearfoot Circle, #2.

13. I observed that the phone number saved on ISLEY's phone as "Mike Fila" was the phone number associated to Christian LANDRY. I also observed a text where "Mike Fila" directed ISLEY to meet him where he was staying, 7410 Bearfoot Circle, #2.

14. ATF Task Force Officer Allen Adair obtained a State search warrant for 7410 Bearfoot Circle, #2, Anchorage, which was executed later the night of February 9. When the warrant was executed, Christian LANDRY and Jaron STEELE were present in the unit. Both LANDRY and STEELE later admitted to staying there, and identified the respective rooms they had been using. TFO Adair seized $24,282 in U.S. currency from a backpack in LANDRY's room and approximately 3.5 pounds of methamphetamine from a closet in STEELE's room. TFO Adair also seized a pistol from LANDRY's room, which was on the bed next to the backpack with money inside. I later field tested this methamphetamine and received a presumptive positive result for methamphetamine.

15. I conducted a Mirandized interview of LANDRY on February 9. LANDRY told me that he lived in Texas, and came up to Alaska periodically to visit the mother of his child. At first LANDRY said that the money seized from his room was proceeds from selling "weed" in Alaska. When I pointed out discrepancies in LANDRY's story that indicated he wasn't truthful, he claimed he had brought the money with him from Texas, and it was not from selling marijuana. LANDRY admitted the pistol was his and that he had purchased it

Mar 21 2023

in Alaska. I later confirmed LANDRY had purchased the firearm, an HS Produkt, XDS, .45 caliber semi-automatic pistol, through an ATF Firearms Trace Summary report.

16. An examination of the cash seized from the apartment showed that it contained $3,850 of the pre-recorded funds used in the February 9 transactions and $300 used in the February 1 transactions.

17. I later conducted a more thorough examination of ISLEY's phone, which showed numerous text messages from December 18, 2022 through February 10, 2023, in which they discuss plans to distribute controlled substances, with LANDRY providing the substances to ISLEY for further sale.

18. I later interviewed Eric HANNULA on two different occasions. HANNULA was not arrested or detained during these interviews and voluntarily agreed to be interviewed. HANNULA eventually admitted that he had received methamphetamine from LANDRY. HANNULA also relayed that LANDRY and STEELE both lived outside of Alaska, which he knew because he had picked them both up from the airport numerous times; and when one came, the other usually came as well. HANNULA recalled that STEELE was from California. HANNULA would give them rides, and LANDRY would pay HANNULA in cash for giving LANDRY rides. Eventually HANNULA came to understand that LANDRY was dropping off drugs and picking up money on some of the trips. HANNULA described giving LANDRY a ride to Granny's Guns in Anchorage on Anchorage, and was with LANDRY when LANDRY purchased a pistol there. HANNULA said LANDRY told him he wanted a handgun because he was concerned about recent robberies he had heard


about. It was HANNULA's understanding LANDRY was talking about robberies of people involved in illegal activity, not the robbery of legitimate businesses.

19. I had previously learned from DEA Agent Austin Hatch that LANDRY had arrived in Alaska on January 10, 2023 on an Alaskan Airlines flight from Houston. This is consistent with the ISLEY's description to me in my undercover capacity of the methods used by his source of supply. This is also consistent with LANDRY's own statements that he travelled back and forth between Texas and Alaska.

**CONCLUSION**

20. I have probable cause to believe that LANDRY has committed the offenses described in the complaint. Accordingly, I ask the court to issue a warrant for LANDRY's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

RESPECTFULLY SUBMITTED,

THOMAS KING
Digitally signed by THOMAS KING
Date: 2023.03.20 16:33:59 -08'00'

Thomas J. King
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R. Crim. P.4.1 and 41(d)(3), this 21st day of March 2023.

The Hon. Matthew M. S___
Chief United States Magistrate Judge

U.S. v. Landry
3:23-mj-00183-MMS